**NRG EXPLORATION, INC., Appellant,**

**v.**

**Frank E. RAUCH, et al., Appellees.**

**No. 14041.**

Court of Appeals of Texas,
Austin.

May 2, 1984.

**650**

Harvey F. Cohen, Houston, for appellant.

Bill Fitzgerald, Fitzgerald, Meissner, Augustine & Alexander, Austin, for Frank E. Rauch, et ux.

Jay Doyle, Kuhn, Mallios & Doyle, Austin, for Bill Fenn, Inc. and Joe Marie Oil Co., for appellee.

Before PHILLIPS, C.J., and POWERS and BRADY, JJ.

PHILLIPS, Chief Justice.

NRG Exploration, Inc. appeals from the judgment of the trial court which ruled that the oil, gas, and mineral lease held by NRG had expired, except for acreage in three producing units.

We reverse in part and affirm in part.

Although no findings and conclusions were filed following the nonjury trial, most of the facts are undisputed and conclusively established by the record. On July 14, 1975 Frank and Cleo Rauch, appellees, executed an oil, gas, and mineral lease in favor of Shenandoah Oil Corporation; the lease covered a 371.15 acre tract of land. Appellant NRG is an assignee of successors in title to Shenandoah.

The lease provided for a five-year primary term. The lease additionally provided (in a modified-Pugh clause) that it would remain in effect, as to nonpooled acreage, for an additional two years beyond the five-year primary term only if the following conditions were met: that some portion of the leased acreage be pooled; that there be production within such pooled unit; and that the lessee make delay rental payments on the nonpooled acreage as if the primary term was in effect.

It is undisputed that on July 14, 1980, the end of the five-year primary term, the above-mentioned conditions had been met. Three separate portions of the Rauch tract had been designated pooled with other tracts so as to form three pooled units: the Skipper unit, the Rauch unit, and the Big A unit. At the end of the five-year primary term, there were producing wells on two of the pooled units (the Skipper and Rauch units); a well had previously been permitted for the Big A unit, but drilling had not begun. Approximately 200 acres of land originally covered by the lease remained nonpooled.

On September 24, 1980, the Rauches filed suit against NRG's assignor (cause number 13,100). The Rauches contended that NRG's assignor was permitting drainage to occur; the Rauches sought damages as well as cancellation of the entire lease. In December of 1980 drilling commenced on the well permitted for the Big A unit; production was obtained in March of 1981.

On August 4, 1982, after the two-year delay-rental period would have expired by its own terms, the Rauches executed another oil, gas, and mineral lease of the lands covered by the 1975 lease, excepting the acreage included in the Skipper and Rauch units. Lessee under this 1982 lease was K & C Exploration, Inc. The Rauches took a voluntary nonsuit in cause number 13,100 on October 13, 1982.

NRG instituted the action which is the subject of this appeal in March of 1983. They sought a declaration to the effect that the 1975 lease was still effective. It was NRG's contention that by filing suit in cause number 13,100 the Rauches had repudiated the 1975 lease, and therefore that the period of time between the filing of such action and the taking of the nonsuit should be excluded from the running of the two-year delay-rental period.

The Rauches asserted a counterclaim. They sought a declaration that the 1975 lease was no longer in effect. Intervenor-appellees, Bill Fenn, Inc. and Joe Marie Oil Company (hereinafter intervenors), requested a declaration that the 1975 lease was no longer in effect, as well as a declaration that the 1982 lease was in effect. Intervenors claim under the 1982 lease by virtue of assignments from the lessee, K & C Exploration, dated August 16, 1982 and October 15, 1982. Intervenors pleaded facts sufficient to show that they were bona fide purchasers: that they paid K & C good and valuable consideration for the assignments, and also that they took the assignments without notice, actual or constructive, of NRG's leasehold claim.

After admitting exhibits and hearing testimony, the trial court decreed that the 1975 lease "expired and terminated prior to August 4, 1982, except as to acreage [included in the Rauch, Skipper, and Big A units]." The judgment is silent as to the affirmative declaration (regarding the 1982 lease) requested by intervenors. The judgment does provide, however, that all relief not expressly granted is denied.

Appellant-plaintiff initially contends that the trial court granted a preemptory judgment for appellees at the close of appellant's case. It asserts that our standard of review therefore must be the same as if the trial court had granted a motion for instructed verdict at the close of plaintiff's

case in a jury trial, and further argues such standard to be as follows: the reviewing court must accept as true all evidence which, when liberally construed in the plaintiff's favor, tends to support plaintiff's case; the court must indulge every intendment in the plaintiff's favor and against the judgment; the court must ignore all contradictory evidence favorable to the defendant.

■ We need not decide whether the above standard properly would be applied to review a judgment rendered upon motion for judgment following the close of plaintiff's case. We are unable, from the record before us, to determine that the proceeding was prematurely terminated: the hearing began with the admission of exhibits introduced by appellant, as well as exhibits introduced by intervenors; appellant then put on witnesses, who were cross examined; closing argument was not recorded; the transcript contains no motion for judgment, nor does the statement of facts indicate that one was made. We therefore will presume that all parties presented such evidence as they desired, and that the final judgment was rendered after all parties rested.

■ When, as in this nonjury trial, findings of fact and conclusions of law are neither requested nor filed, the trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Seaman v. Seaman,* 425 S.W.2d 339 (Tex.1968). We will review the judgment based upon this standard.

■ On appeal, the parties joined issue on the proper application of the doctrine of repudiation. A lessor who wrongfully repudiates its lessee's lease cannot complain if the latter suspends operations. *Kothman v. Boley,* 158 Tex. 56, 308 S.W.2d 1 (1957). A suit brought by a lessor to have the lease terminated constitutes a repudiation. *Miller v. Hodges,* 260 S.W. 168 (Tex. Com.App.1924); Summers, Oil & Gas § 451 (1958). If the lessor does not prevail, the lessee will be allowed a reasonable time after termination of the litigation in which to perform conditions required to extend the lease. *Miller v. Hodges, supra; see* Summers, *supra* §§ 301 & 451.

Appellees concede that the 1980 lawsuit was a repudiation of the 1975 lease. Consequently, they acknowledge that if appellant and its predecessor in title suspended operations during the pendency of the lawsuit, the running of the two-year delay-rental period would have been tolled. However, appellees assert that operations were not suspended: they specifically point to the fact that drilling of the well on the Big A unit commenced after the lawsuit was filed.

■ Therefore, we are called upon to decide whether a lessee's post-lawsuit commencement of drilling in a pooled unit, containing land designated pooled prior to institution of the repudiating suit, will preclude the application of the doctrine of repudiation as to nonpooled acreage. We hold that application of the doctrine of repudiation, under the facts of this case, is not thereby precluded.

■ The doctrine of repudiation is merely a variation of the doctrine of estoppel. *See Kothman v. Boley, supra; Atlantic Richfield Company v. Hilton,* 437 S.W.2d 347 (Tex.Civ.App.1969, writ ref'd n.r.e.). As such, it is an equitable doctrine. *See* 22 Tex.Jur.2d Estoppel § 2 (1969).

Here, the two-year delay-rental period had already been activated by payment of delay rentals and by production in other pooled units; production in the Big A unit could not serve to further extend the duration of the lease as to nonpooled acreage. Therefore, operations on the Big A unit could have no effect on the nonpooled acreage.

The act of designating a portion of the Rauches' land as being included in the Big A unit cannot be a basis upon which to preclude application of the doctrine of repudiation, since the designation was made prior to the commencement of the Rauches' repudiating lawsuit. We reject appellees' contention that appellant's failure to file a new unit plat deleting the Rauches' acre-

age from the Big A unit is a basis upon which to preclude application of the doctrine of repudiation.

Appellees contend that *Atlantic Richfield Company v. Hilton, supra* stands for the proposition that operations on pooled acreage by a lessee will preclude the application of the doctrine of repudiation as to nonpooled acreage. Appellees err in this conclusion. The *Atlantic* court determined that under the facts of that case there had been no repudiation of the lease. The court then, in dictum, noted that the lessee did not rely to its prejudice upon the acts alleged to constitute repudiation; as evidence of this, the court stated that the lessee had been "of the opinion that it was continuing operations on the lease by virtue of combining [the entire lease with another tract], upon which other tract [a] producing well was located."

The situation before us is easily distinguishable from the *Atlantic* case. In *Atlantic*, the court was not dealing with nonpooled acreage; the entire lease had been pooled. Here, our focus is exclusively on the effect that operations on pooled units will have on nonpooled acreage.

Since we have determined that the undisputed evidence shows that the Rauches repudiated the 1975 lease, we sustain appellant's sole point of error to the extent that it provides that the trial court erred in declaring that the 1975 lease expired as to the Rauches. However, we overrule the point of error to the extent that it provides that the trial court erred in granting relief to intervenors.

Intervenors in effect pleaded that they were bona fide purchasers. They introduced into evidence the 1982 lease and the assignments under which they claimed. At the time intervenors took their assignments of the 1982 lease, the 1975 lease had; upon its face, expired.

■ To establish that the 1975 lease had not expired, appellant had to rely upon an equitable doctrine. Appellant's title was therefore equitable in nature. An equitable title is an enforceable right to have legal title transferred to the holder of the equitable right. *Neeley v. Intercity Management Corp.*, 623 S.W.2d 942 (Tex.App. 1981, no writ).

■ A bona fide purchaser is one who buys property in good faith for valuable consideration and without knowledge (actual or imputed) of outstanding claims in a third party. *Carter v. Converse*, 550 S.W.2d 322 (Tex.Civ.App.1977, writ ref'd n.r.e.). A bona fide purchaser will prevail over the holder of a prior equitable title. *Neeley v. Intercity Management Corp., supra*. An assignee of the mineral leasehold estate is entitled to full protection as a bona fide purchaser; an equitable-title claimant has the burden of proving that a subsequent assignee of legal title is not a bona fide purchaser. *Id.; see Westland Oil Development Corp. v. Gulf Oil*, 637 S.W.2d 903 (Tex.1982).

■ Appellant, a claimant of equitable title, had the burden to prove that intervenors, assignees of legal title, were not bona fide purchasers; appellant did not discharge this burden. There is no evidence in the record which would indicate that the intervenors are not bona fide purchasers. On the contrary, there is testimony that intervenors paid valuable consideration for the assignment and that intervenors were not told that the 1980 lawsuit (cause number 13,100) had been filed.

■ This Court has the duty, in this declaratory judgment action, to render such judgment as the trial court should have rendered. *Tall Timbers Corp. v. Anderson*, 370 S.W.2d 214 (Tex.Civ.App.1963), rev'd on other grounds, 378 S.W.2d 16 (Tex. 1964). Ordinarily, upon finding a repudiation, when only the rights of the lessor and lessee are involved, we would hold that the judgment of the trial court should be reversed and judgment here rendered that the 1975 lease should remain in full force and effect for a term equal to the unexpired delay-rental period (that portion of the period remaining as of the time the Rauches filed the 1980 repudiation suit).

*Tar Heel Energy Corporation v. Menking,* 621 S.W.2d 450 (Tex.App.1981, no writ).

 However, we must affirm the trial court's judgment to the extent that it grants relief to the intervenors. As between intervenors and appellant, the 1975 lease expired and terminated (except as to pooled acreage). The rights of the intervenors, created by the Rauches' conduct, are an impediment to appellant's enjoyment of appellant's mineral estate. For that reason, the ordinary remedy is not appropriate.

The trial court's judgment is reversed to the extent that it granted relief to the Rauches; judgment is here rendered that, as between the Rauches and appellant, the 1975 lease is in full force and effect. The trial court's judgment is further reformed to more specifically reflect that as between intervenors and appellant, the 1975 lease expired and terminated (except as to pooled acreage). The trial court's judgment is in all other respects affirmed. In this manner, the trial court's judgment will not operate as a bar to any future legal or equitable relief sought against the Rauches by appellant.

It is so ordered.