**NRG EXPLORATION, INC., Appellant,**

v.

**Frank E. RAUCH, Cleo Rauch, and R & R Resources, Inc., Appellees.**

**No. 03–94–00634–CV.**

Court of Appeals of Texas, Austin.

Aug. 16, 1995.

Rehearing Overruled Sept. 13, 1995.

---

Harvey F. Cohen, Austin, for appellant NRG Exploration, Inc.

Charles W. Kennedy, Jr., Houston, for appellee R & R Resources.

David T. Altenbern, Houston, for appellee Frank Rauch and Cleo Rauch.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

## ON MOTION FOR REHEARING

CARROLL, Chief Justice.

This Court's opinion and judgment of July 12, 1995 are withdrawn, and the following opinion and judgment are substituted. This oil and gas lease dispute between appellant NRG Exploration ("NRG") and Frank and Cleo Rauch, appellees, comes before us a second time. In *NRG Exploration, Inc. v. Rauch*, 671 S.W.2d 649 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (*"Rauch I"*), this Court held that the Rauches wrongfully repudiated NRG's lease but denied declaratory relief to NRG at that time because the Rauches had granted a second lease that had been assigned to a bona fide purchaser. NRG subsequently filed the present lawsuit seeking legal and equitable relief against the Rauches. Following a non-jury trial, the trial court rendered a take-nothing judgment on NRG's claim against the Rauches. We will reverse the judgment of the trial court.

## BACKGROUND

On July 14, 1975, the Rauches executed an oil, gas, and mineral lease covering a 371.15–acre tract of land in favor of Shenandoah Oil Corporation (the "1975 lease"). NRG is an assignee of successors in title to Shenandoah. The 1975 lease provided for a five-year primary term and an additional two-year term if certain conditions were met. On July 14, 1980, the five-year primary term ended, and all of the conditions for extending the lease two additional years had been met. However, on September 24, 1980, the Rauches filed suit against NRG's assignor, Ammex Petroleum, Inc. ("Ammex"), seeking damages and cancellation of the 1975 lease.[1] On August 4, 1982, after the two-year delay rental period would have expired by its own terms, the Rauches leased approximately 215 acres of the lands covered by the 1975 lease to K & C Exploration (the "1982 lease").[2]

Ammex assigned its interest under the 1975 lease to NRG on February 8, 1983, and

---

1. The Rauches took a voluntary nonsuit in this lawsuit on October 13, 1982.

2. This 215–acre leasehold estate is the subject of the present lawsuit.

the following month, NRG sued the Rauches, claiming that they had interfered with its rights to drill and explore and seeking a declaration that the 1975 lease was still in effect. The Rauches asserted a counterclaim, seeking a declaration that the 1975 lease was no longer in effect, and intervenors Bill Fenn, Inc. and Joe Marie Oil Co. (the "intervenors") requested a declaration that the 1982 lease was in effect and the 1975 lease was not. On March 18, 1983, NRG obtained a temporary injunction enjoining Frank Rauch from committing any violent acts or impairing NRG's right to drill on the property pursuant to the 1975 lease. Pursuant to the temporary injunction, NRG began preparations for a drill site, expending over $36,000. The trial court heard the case on the merits on April 28, 1983 and rendered final judgment denying all declaratory and injunctive relief requested by NRG.

On appeal of the trial court's judgment in *Rauch I*, NRG argued that by filing suit in 1980, the Rauches repudiated the 1975 lease; therefore, the 1975 lease was still in effect.[3] This Court held that the Rauches had repudiated the 1975 lease and that the lease should remain in full force and effect as between the Rauches and NRG, but that as between intervenors and NRG, the lease was terminated because the intervenors were bona fide purchasers. *Rauch I,* 671 S.W.2d at 654. The opinion concluded: "[T]he trial court's judgment will not operate as a bar to any future legal or equitable relief sought against the Rauches by appellant." *Id.*

While the appeal in *Rauch I* was pending, the Rauches filed a lawsuit against NRG, alleging trespass and interference with property. This Court issued its opinion in *Rauch I* in May 1984, and NRG filed a counterclaim against the Rauches on August 6, 1984 for fraud and breach of contract and then an amended answer and counterclaim on February 28, 1992.[4] At the beginning of the trial, the parties agreed to realign the parties, and NRG proceeded to trial as plaintiff on its second amended counterclaim.

At the close of trial on March 31, 1992, the court took the case under advisement. On November 8, 1993, R & R Resources filed an intervention, claiming that it had acquired an interest in a portion of the leased property in dispute. The trial court allowed the intervention and reopened the trial on November 16, 1993. Although the court initially rendered judgment awarding NRG the costs of preparing the drill site, the trial court vacated that judgment. On September 9, 1994, the trial court rendered a take-nothing judgment against NRG.

### DISCUSSION

On appeal, NRG raises five points of error, contending that the trial court erred: (1) in ruling that NRG was not entitled to recover on its claim for breach of contract; (2) in failing to award NRG damages for the costs of preparing the drill site on the 215–acre tract; (3) in failing to award NRG damages for the undisputed value of the 215–acre tract; (4) in ruling that NRG's leasehold interest in the 215–acre leasehold estate had expired; and (5) in ruling that NRG was not entitled to recover prejudgment interest and attorney's fees.

■ In its first point of error, NRG claims that the trial court erred in ruling that NRG was not entitled to recover on its claim for breach of contract; NRG further contends in its third point of error that the trial court erred in failing to award it damages for the undisputed value of the 215–acre leasehold estate. The Rauches respond that NRG was not entitled to recover on its claim for breach of contract because NRG's rights under the lease had been extinguished.

■ NRG relies on the "law of the case" doctrine to support its contentions. The law of the case doctrine is the legal principle under which questions of law decided on appeal will govern the case throughout subsequent stages. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). We disagree

**3.** NRG argued that because the Rauches repudiated the lease by filing the lawsuit, the period of time between the filing of the 1980 suit and the taking of the nonsuit should be excluded from the running of the two-year delay rental period.

**4.** This lawsuit is the subject of the present appeal.

that the law of the case doctrine is applicable to the instant case; the doctrine applies to a single case throughout all of its subsequent stages, including retrial and ensuing appeal. *Houston Endowment, Inc. v. City of Houston,* 468 S.W.2d 540, 543 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). Because the instant case involves a different lawsuit from the one on appeal in *Rauch I,* the law of the case doctrine does not apply. Instead, the doctrine of collateral estoppel controls NRG's first and third points of error.

Whenever a party to a suit attempts to relitigate the same matter that was in issue and adjudicated in a previous action between the party and its opponent, the doctrine of collateral estoppel applies. *See Tarter v. Metropolitan Sav. & Loan Ass'n,* 744 S.W.2d 926, 927 (Tex.1988). To establish the elements of collateral estoppel, a party must show: (1) the facts sought to be litigated in the second suit were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex.1990). The third element is clearly met; NRG and the Rauches were cast as adversaries in the prior action. Therefore, the question of whether collateral estoppel bars the Rauches from relitigating the issue of breach of contract in the second action turns on the first two elements.

The issue of whether NRG was entitled to recover on its claim for breach of contract was fully and fairly litigated in *Rauch I.* This Court rejected the Rauches' argument that the 1975 lease had expired when we held that the 1975 lease was in full effect as between NRG and the Rauches and concluded that NRG could pursue legal or equitable relief against the Rauches in the future. In reaching our holding in *Rauch I,* we relied upon the same facts the Rauches sought to relitigate in the present action; those facts were essential to the judgment in *Rauch I.* We thus conclude that collateral estoppel

operates to bar the Rauches from relitigating the issue of whether they breached the 1975 lease.

The Rauches contend that because NRG "could have and should have" brought a claim for damages in *Rauch I,* the doctrine of res judicata bars NRG's cause of action for damages in the instant cause. Res judicata prevents the relitigation of a claim or cause of action that has been finally adjudicated, "as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992). We do not agree that the doctrine of res judicata bars NRG's cause of action for damages. In *Rauch I,* NRG did not pursue a cause of action for damages but instead brought a cause of action solely for declaratory relief. This Court expressly recognized that the trial court's judgment in *Rauch I* would not operate as a bar to "any future legal or equitable relief" sought by NRG against the Rauches. *Rauch I,* 671 S.W.2d at 654.

We thus hold that the trial court erred in ruling that NRG could not recover on its claim for breach of contract against the Rauches and in failing to award NRG damages for the value of the 215–acre leasehold estate and render judgment awarding NRG damages for the undisputed value of the estate in the amount of $43,000.[5] We therefore sustain NRG's first and third points of error.

In its second point of error, NRG argues that the trial court erred in failing to award it damages for the cost of preparing a drill site on the 215–acre tract. On March 18, 1983, the trial court granted a temporary injunction prohibiting the Rauches from interfering with NRG's attempts to drill on the lease. On April 28, 1983, the trial court reversed its ruling and rendered judgment denying all declaratory and injunctive relief requested by NRG. According to NRG, it incurred over $36,000 in expenses preparing the drill site on the 215–acre tract during the period between March 18 and April 28, 1983.

5. The value of the leasehold estate was established by two different witnesses who testified that the 215–acre tract had a value of not less than $200 per acre. Thus, NRG's damages are 215 times $200, which amounts to $43,000.

NRG contends that it is entitled to recover damages for those costs because it was acting in reliance on the temporary injunction order when it incurred the expenses. The Rauches respond that NRG incurred the expenses at its own risk after obtaining the temporary injunction, which was subject to being changed, because it knew or should have known of an adverse claim by a bona fide purchaser.

"To be in good faith in developing a tract of land for oil and gas, one must have both an honest and a reasonable belief in superiority of one's title." *Mayfield v. de Benavides,* 693 S.W.2d 500, 504 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). When a party enters onto property and makes improvements with full knowledge of the pendency of an action to enforce an adverse claim, the party is conclusively considered a trespasser in bad faith. *Id.* A party's entry onto land may be determined to be unlawful even if that party obtained a temporary injunction beforehand. *Moore v. Rotello,* 719 S.W.2d 372, 377 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

NRG knew of the pendency of an adverse claim when it incurred expenses to prepare the drill site. Therefore, it did not have an honest and reasonable belief in the superiority of its title over the title of a bona fide purchaser. The purpose of a temporary injunction is to maintain the status quo, not to adjudicate a case on the merits. *Recon Exploration, Inc. v. Hodges,* 798 S.W.2d 848, 853 (Tex.App.—Dallas 1990, no writ). It was unreasonable for NRG to rely on the temporary injunction as establishing the superiority of its title. We thus hold that the trial court did not err in refusing to award NRG damages for the cost of preparing the drill site and overrule NRG's second point of error.

NRG complains in its fourth point of error that the trial court erred in ruling that its leasehold interest in the 215 acres had expired. According to NRG, when the 1982 lease expired and the 215–acre tract reverted to the Rauches, the NRG lease should have become effective again. However, NRG's argument runs head-on into two obstacles. First, the doctrine of election of remedies bars NRG from recovering both damages for breach of the lease and specific performance of the lease. *See Seegers v. Spradley,* 522 S.W.2d 951, 957 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.) (holding that plaintiff cannot recover both actual damages and specific performance of contract); *Redding v. Ferguson,* 501 S.W.2d 717, 720 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.) (concluding that when party obtains final judgment for damages, party can no longer demand specific performance of contract). NRG sought damages for the value of the 215–acre leasehold estate; it cannot recover both damages and specific performance of the remaining lease term. If the election of remedies doctrine were the only obstacle, NRG would have the option of electing its remedy: damages or specific performance of the lease.

However, a second obstacle bars NRG from electing the remedy of specific performance of the lease. In *Rauch I,* this Court held that as between NRG and the intervenors, the 1975 lease was expired and terminated. As long as the 1982 lease, under which the intervenors acquired their interest in the leased property, is in effect, NRG cannot recover specific performance of the 1975 lease. *See Rauch I,* 671 S.W.2d at 653 ("A bona fide purchaser will prevail over the holder of a prior equitable title.").

NRG contends that the 1982 lease has expired because K & C's assignees ceased commercial production on the leased property. However, NRG has no standing to request a determination of whether the 1982 lease has expired because it is neither a party to the 1982 lease agreement nor a party in interest to the lease agreement. The object of a lease is to secure development of the leased property for the mutual benefit of the parties to the lease. *Garcia v. King,* 139 Tex. 578, 164 S.W.2d 509, 512 (1942). The 1982 lease had a one-year primary term, extended for so long as oil or gas was produced. The purpose of the lessors, the Rauches, in executing such a lease was to have oil and gas produced on the premises and marketed so that they could receive their royalty under the lease. *Id.* 164 S.W.2d at

511. They included the production clause so that they would "not be required to suffer a continuation of the lease after the expiration of the primary period merely for speculation purposes on the part of the lessees." *Id.* 164 S.W.2d at 513.

 It logically follows that the right to terminate a lease based on lack of commercial production is vested exclusively in the lessor. While NRG argues otherwise, it concedes that there is no authority for its proposition that a stranger to a lease can seek termination of the lease based on lack of commercial production. We thus decline to entertain its argument [6] and overrule NRG's fourth point of error.

In its fifth point of error, NRG claims that the trial court erred in ruling that it was not entitled to recover prejudgment interest and attorney's fees. The Rauches argue that NRG failed to plead for an award of prejudgment interest and is thus barred from recovery of such. *See Benavidez v. Isles Constr. Co.,* 726 S.W.2d 23, 25 (Tex.1987) (noting that prejudgment interest must be pled in order to be recovered). However, NRG pled for an award of prejudgment interest in its third amended pleading. After the trial had begun, NRG filed a motion to allow a post-trial amendment to assert a claim for prejudgment interest. Although there is no signed order in the record granting NRG leave to file the amended pleading, the court's ruling is evidenced by the fact that NRG's third amended pleading was filed on January 5, 1994, the Rauches opposed the motion in a response dated February 11, 1994, and the first judgment signed by the trial court dated April 13, 1994 included an award of prejudgment interest to NRG. *See Lloyd's of London v. Walker,* 716 S.W.2d 99, 103 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) ("The record here does not disclose whether leave for either the trial amendment or the amended pleading was granted, but since it was

obviously considered by the court, leave is presumed."). We therefore sustain NRG's fifth point of error with regard to prejudgment interest.

 With regard to the issue of attorney's fees, we overrule NRG's fifth point of error. Section 38.001 of the Texas Civil Practice and Remedies Code entitles a party to recover reasonable attorney's fees from an individual or corporation if the claim is for an oral or written contract. Tex.Civ.Prac. & Rem.Code Ann. § 38.001(8) (West 1986). However, in order to recover attorney's fees under section 38.001, the party must comply with the requirements of section 38.002, which requires the claimant to present the claim to the opposing party. *Id.* § 38.002. The Rauches contend that NRG is not entitled to recovery of attorney's fees because it failed to meet the prerequisites for recovery set out in section 38.002, and NRG concedes that there is no evidence of presentment in the record. We thus hold that NRG is not entitled to recovery of its attorney's fees.[7]

## CONCLUSION

The trial court erred in ruling that NRG was not entitled to recover on its claim for breach of the 1975 lease, in failing to award NRG damages for the value of the 215–acre leasehold estate, and in ruling that NRG was not entitled to recover prejudgment interest. We thus reverse the trial court's judgment and render judgment that NRG recover $43,000 in actual damages, prejudgment interest on that amount at the rate of ten percent per annum from September 24, 1980 [8] through the date of this judgment, and post-judgment interest at the maximum legal rate from the date of this judgment until paid. *See* Tex. R.App.P. 81(b)(3) (requiring appellate court to render such judgment as trial court should have rendered, except when necessary to

---

6. Where an appellant cites no authority in support of a point of error, the court should overrule the point of error. *Teague v. Bandy,* 793 S.W.2d 50, 58 (Tex.App.—Austin 1990, writ denied).

7. Because of our disposition of NRG's points of error, it is unnecessary to address R & R Resources's cross-points.

8. As a matter of law, the date of repudiation has been established as September 24, 1980. *See Rauch I,* 671 S.W.2d at 651–53.

remand to court below for further proceedings).